and my understanding is that we have the same counsel on this case and the subsequent case but they're they've got different facts but some related issues yes the the the issue as the state your name I cut you off there I'm sorry judge Callahan yes okay thank you my name is Brian Isaacson and I'm the attorney for both Paul Norman and Tony Cadillac and the substantive issues are the same in both cases involving the treatment of the ANC NOL under section 5060 the Tony Cadillac case has the additional issue as to whether or not the IRC section 83 B election is valid he also has the issue as to whether or not the claim of right doctrine applies I in short in that analysis if the section 83 B election is valid then the claim of right doctrine would not apply however if it is it would apply so with my time what I'd like to do is take my full ten minutes and Paul Norman the arguments in Norman and Cadillac would be the same and we will import that into then consider them to be crossovers yes please so I don't have to repeat the same argument and then I'd like to do in Cadillac is the argument under section 83 be assured is just take five minutes and then reserve five minutes for rebuttal okay proceed okay um that's good me do you want to consolidate both arguments in yes your honor all right I have no objection we'll grant your consolidation because I know that the government is similarly represented in both cases you don't have any objection to you all right thank you the reason that we're here is that the administrative interpretation does not reconcile with the language of the statute that was adopted by Congress unfortunately the administrative position was also adopted by the Fifth maybe unfortunate but we're not necessarily bound by the Fifth Circuit but it is now the law in the Fifth Circuit and what do we do with that well that's that's what I'd like to address the actually on the IRS's position can be summarized in Merlot and the Merlot decision and at star 624 for D2A1 creates an exception to the usual rule under 172 D that capital losses are taken into account for NOL purposes only to the extent of capital gains and then the court says but Merlot misapplies the statute the court says the starting point for the AMT NOL computation under 172 C and D which accounts for capital losses and limits them to capital gains and then the court cites to 56 D1 then the court states that none of the modifications made in the second step as directed by 56 D2A override the 172 D limitations now you know Mike I guess a question that I have is is your argument dependent upon our determination that the statutes an issue particularly I think 26 USC section 56 are clear and command your interpretation I guess stated in another way if we find the statutes to be ambiguous why should we not defer to the government's interpretation of the statutes well it's it's sort of actually the the AMT is has never been been the model of clarity but number one it is incumbent upon the government and and or at least on the agency and it's not clear isn't that government entitled to some deference in the interpretation I mean if you're if you you know it would seem to me to prevail you have to convince us that it is clear and unambiguous well I think that we can do that as to certain aspects of it it's it's sort of like looking at at Mars or Venus through a telescope there are certain truths that we know about the planet and certain things that we know to be untrue and I think in that interpretation if we look at those things that we know to be true and I think that the court has a reasonable basis to override the government what does that mean things are to be true what's that mean well let me go into that is is the the language that what the government's arguing is that none of the modifications made in the second step as directed toward 56 d2a override the 172 limitations well we know that the plain language of the statute directly contradicts that conclusion by the Court of the Appeals tell me how it contradicts please okay first the 56 before which is entitled alternative tax net operating loss deduction specifically overrides the 172 limitations how to tell me where that is please it's in the Internal Revenue Code which section it's 56 before and that section states that the alternative net operating loss deduction shall be allowed in lieu of the net operating loss deduction allowed under section 172 so it directly overrides the 172 T limitations and it does so specifically and actually there there are four places in the statute where it does so and please let me know if I'm speaking too quickly or if I should slow down well I yes let me give you the four statutes that override specific just get me to the right one d4 is what you're talking about 172 d4 I'm talking about 56 be as in very for the second one is 56 d as in dog one B one little I the third is I've got those okay and let's let's talk about that first of all 56 before it specifically states that the alternative tax net operating loss deduction shall be allowed in lieu of the net operating loss deduction under 172 so it shows that as to the alternative minimum tax second 56 D 1 B 1 little I provides that in determining the amount of such deduction the net operating loss within the meaning of section 172 C for any loss year shall be adjusted as provided in paragraph 2 and so what that means is that you start at the starting point the net operating loss under 172 C and let's say that's $3,000 then after that point you make the adjustments so you've already taken the 172 limitations at the first sequence in the statute but at the second sequence of statute there are no 172 limitations third the third section of the statute set section 56 D to cap a provides that in the case of a loss year beginning after December 31st 1986 the net operating loss for such year under section 172 C shall one be determined with the adjustments provided in this section 56 and alternative minimum tax adjustments relating to ISOs are adjustment items under 56 D to a one little I because incentive stock options are an adjustment item under 56 B 3 and the statute states that 56 D to a one little I applies to all adjustments under section 56 now the final thing that we know is that Congress intended to apply the adjustments to 56 D to a one little I but not I'm sorry they one little I and the reason for that is we know from the flesh language at the end of 56 D to a it says that there is an additional adjustment based upon 172 for those adjustments under 56 D to a two little I but there is no such adjustment under 56 D to a one little I so we know that Congress had looked at the issue as to whether adjustment should be applied under one little I and they said that they were not and actually it does make this is very technical but and you're you're throwing things around if we look to D to little D to a double I it references the fact that an item of tax preference blah blah you were using that right it yes and it references 72 C 72 C sub 2a indicates the amount deductible on account of losses from stale as exchange of capital assets shall not exceed the amount includable on gain account gains from sales or exchange of capital losses now this how do you figure that in well that only applies to the adjustment under two little I but it does not apply to the adjustment under one little I okay what are the adjustments under one little I well specifically okay specifically one of the reasons that we are here is that that the Treasury has provided very little guidance as to the adjustment to one little I they've not adopted any Treasury regulations not any revenue rulings the only interpretation that we have for the calculation under the one little I adjustment are in the instructions to the form 6251 which the IRS has changed in in 2001 even though though the long-standing instructions were in place from 1988 to 2000 and so the IRS and and and the district court held that the instructions are not authoritative but as a practical matter they are how the statute was applied well what do they say well but what they say is that the original instructions state that the taxpayer is required to enter on line 9 of the form 6251 the difference between the gain or loss if any reported on the regular tax and that figured for the AMT as a negative amount now listen to this the difference as the negative amount is one if the AMT gain is is less than the regular tax gain to the AMT loss is more than the regular tax loss that it says to enter the full difference if if if this were not the case under the agency's interpretation but they're arguing is is that when there's both an AMT loss and a regular tax loss you enter zero because the AMT loss is limited under 172 to $3,000 the AMT loss they argue is limited to $3,000 under 172 which provides you with a zero adjustment but this is not what their own instructions say their own instructions I guess you have two different you know you have paper losses and then some people have actual losses and obviously the government's arguing that those are treated differently can you explain to me conceptually what policies would be furthered by not limiting the AMT NOLs to the limits for regular tax NOLs I can your honor first thing is under this limitation under the statute there was actually a trade-off for allowing the full deduction and that departure is under 56 d1 a where the increased lost is subject to a 10% additional haircut after the loss computation and so the trade-off was that Congress allowed the full losses in full but yet at the end of the statute they require a 10% haircut the other part policy is it's the avoidance of double taxation really one exercises their incentive stock options they pay the tax on the difference between the exercise or the fair market value and the exercise price and they pay this at 28% now if you don't have a negative adjustment in full what you really have is a system of double taxation now we're going into policy and see this is what this is what's troubling me we have a statute and judge Callahan walked right down if the statute is clear we apply the statute what the policy is tax laws have never been fair or reasonable they're just tax laws and you just apply them now if we're trying to change it because you haven't got the money to pay the tax or if it's unfair because you had to pay 28% when you don't have the money that's not the issue here what I'm I know you went through the tax form and you tried to match it against the statute that doesn't get me anywhere and I think the government will straighten this out on I'm still trying to figure out how you as an ordinary you were not in business of trading stocks right right okay so how are you going to get a net operating loss well let me go back to your first questions as to the instructions is that the adjustment does not call for a net operating loss deduction it calls for a so if you have both and the shares are sold as a profit the instructions say that that you get a full reversal of the amount and and so the computation is predicated upon the full recovery of basis not what the losses you're giving you're giving terms here that I'd have to sit down you don't walk through the form we can walk through the form but you're assuming that you fit in one of those those designations on the form can you as an individual your client having a net operating loss deduction he's not in the business of trading stocks he just happened to get a stock option as part of as an incentive to a salary yes and the reason is is that Congress changed the definition of the net operating loss deduction for the alternative minimum tax when they enacted section 56 I don't know what that means these can you still get a yes how do you do that you do it under the rules under the sequence of the statute why do you get that why aren't you limited by the fact that you're an individual and you can a net operating loss relates to what to an individual or to a business the net operating loss relates to a business and the reason that you can get that is because Congress specifically excluded the 172 limitations in in section one little lie of the statute I guess is that government will dispute that but we'll hear from them so you've got you're relying on that provision and the 172 C exclusion we are we're relying upon the plain language of the statute you lose the 172 argument where do you go if we lose the 172 are that actually the 172 argument is is the basis of our claim that's that's what I going through all your your readings that's what I came through the same conclusion yes and it's it's purely a statutory construction argument because executive agencies including the IRS are not permitted to legislate by adding terms or requirements to the statute that simply are not there you've used seventeen and a half minutes do you want to reserve the balance for rebuttal seventeen and a half yep you went through ten and now you've used seven oh you've used almost eight more so do you want to reserve the balance for a rebuttal yes please and then what about Cadillac well you said you wanted to consolidate them and you were going to use ten and five and we're so essentially why don't you sit down and you reserve the balance for rebuttal on both but if we have more questions we'll give you more time okay so essentially you're using your 20 for both cases right now okay okay good morning may it please the court I'm Francesca Tamami counsel for the government in the Norman case counsel for the Commissioner of Internal Revenue in the Cadillac case I just wanted to turn directly to the taxpayers argument that section 56 if the AMT provisions overrides the limitations in section 172 which defines net operating loss for regular tax purposes and that is not correct if you look at the plain language of section 56 d1 and this is on that C as in beer dog D as in dog okay this is page 28 of the government's Norman brief it's in the statutory appendix this defines the alternative tax net operating loss deduction and d1 says for purposes of subsection a4 the term alternative tax net operating loss deduction means the net operating loss deduction allowable for the tax year under section 172 so the starting point for calculating the AMT and a well is section 172 which as judge Burnett he pointed out limits the capital loss deduction for an individual then the remainder of this section 56 D provides that certain adjustments be made based on these AMT preferences adjustments in section 56 57 and 58 none of those adjustments change the regular rules limiting capital losses that that's the short response to the taxpayers argument here and that is that clear or is it ambiguous and we defer to your interpretation it's it's complicated and technical but once you make your way through all the code provisions we think the result is clear under the plain language of the statute and that this court does not need to defer to an agency interpretation to reach that result the the mechanical provisions of the Internal Revenue Code do not allow the taxpayers here to claim the AMT net operating loss in the way that they've said they can and there's no need to defer to the IRS is litigating position or any kind of IRS notice to reach that result where does this 172 argument fall apart 172 C and D 2 & 4 which is let's see just a couple more pages in in our statutory appendix yes page 30 yes the net operating loss is defined in section 172 C that that provision then says look at the modifications in subsection D as in dog d2 says there are two different provisions that limit it d2 says capital gains and losses of taxpayers other than corporations this basically says that if you're not a corporation you can only offset capital losses to the extent of capital gains that's a section I read to him the the C the D to a right correct d2 a and then also a relevant provision here because neither taxpayer was involved in the business of trading socks stocks is d4 which limits non-business deductions of taxpayers other than corporations now the merlot decision isn't binding on us but you I think you both were arguing on that case as well do you think the merlot court got it right we do the merlot case the facts are somewhat different but not in any way that matters the operative facts are the same in that case as in this case the of the stock at that time was very high it subjected him to the AMT he took a substantial hit in terms of AMT income in that year the following year in 2001 his stock became worthless under the Internal Revenue Code that's treated as a sailor exchange of the capital asset at that time he incurred a substantial AMT capital loss that he couldn't do anything with because in 2001 Merlot did not have any alternative minimum taxable income that he could use to absorb the capital loss and he basically made the same argument here that well the capital loss actually gives rise to a net operating loss and I can use that I can carry it back to 2000 to offset that income that I had to realize in that year and that is basically the same argument that both Norman and Cadillac are making here get a regular taxpayer ever carry a net operating loss you can't carry it backward that's for corporation right a regular a net operating loss if you're looking just in the regular income tax context for individuals they can have a net operating loss on the basis of other kinds of losses not capital losses I'm talking about capital loss stay with the capital yet just on capital losses no an individual can never actually carry back a capital loss an individual can use in one tax year they can use their capital losses to offset capital gains so $3,000 and then right up to $3,000 right the basic rule under 72 whatever C is no capital losses over capital gains right and but then there's another section allows you to go up to 3,000 and that's that correct that is section 12 11 12 11 right B as in boy of the internal revenue code that's just for regular taxpayers now and I don't know that counsel is trying to argue that that he should fit into the business category I'm not sure what his argument is there but I don't think he is I to my my understanding of these cases they've never raised that argument well because he was arguing about items on the form but you can't get to an item on the form until you define yourself into the item that's on the form that's correct I think and this argument wasn't specifically raised in this case in these cases as far as I'm aware but I know it's been raised in other similar cases involving AMT net operating losses the argument was that the form I think it was 6251 that individuals used to use or they still use that the form has since been modified but that the form was unclear and that taxpayers going through the form may have been misled into thinking that they could convert an AMT capital loss into an AMT net operating loss now the government submits that that was not the result under this form but in an abundance of caution the IRS issued modified instructions clarifying that you're not point out in both of these cases in Norman and Cadillac the taxpayers originally filed their own returns the government submits correctly neither Norman or Cadillac claimed AMT net operating losses on that form they subsequently filed amended returns after conferring with with with counsel and they then came up with this argument so this is not a situation where either taxpayer was misled by this form improperly reported their tax thought that great I've got a net operating loss and then got a nasty letter in the mail later saying well our form was unclear I'm sorry you couldn't you couldn't avail yourself of this so that argue we can take the form argument put it off to the side correct and that form argument has been I don't think either court addressed it in these cases because I don't think it was raised below but other courts have considered and rejected it particularly I think the Guzak case in the Court of Federal Claims which we cited in our brief and I think also the Lund case which was in the Court of Federal Claims and that was also recently affirmed by the Federal Circuit we sent a 28 J letter last week that I hope the court received there were two cases actually Merlo was one we sent a 28 J about that a while back that was the first Fifth Circuit case there's a second Fifth Circuit case in re Pavlovsky that was also affirmed by the Fifth Circuit said this case appears to be bound by our decision in Merlo and so they affirmed in that case and then the third case is the Lund case which was Court of Federal Claims and affirmed just affirmed without opinion by the Federal Circuit in April unless the court has any further questions regarding the AMT NOL argument I did want to just turn and address the section the taxpayer received both vested and non-vested shares of stock when he exercised his option under section 83 he did not have to include the non-vested shares in income because they were subject to a substantial risk of forfeiture however he made an election to do so under section 83 B as the tax court explained in that case this election is basically a gamble if you think the stock will appreciate by the time it vests by the time you would have to include it in income then you would elect to include it in income now when the value is substantially lower in this case that's what the taxpayer did but he predicted wrong it turned out the stock significantly was devalued by the time it vested and he's trying to get out of his election by arguing that the stock was never transferred to him now that's cut off by 83 B 1 B is that right that 83 B 1 B would be sorry let me just grab my other I think that's the one we're talking about here if the election is made section a shall not apply with respect to the transfers of property and such property subsequently forfeited no deduction shall be allowed in respect to such forfeiture is that the one right well what the taxpayer is arguing in this case is that if you look actually at section 83 B 1 it says any person who performs services in connection with which property is transferred to any person and that's where basically their argument is wait a minute the property was never transferred to us I didn't even have the power to make a section 83 B election so we didn't I didn't need to include the stock and income in 2000 relying on that Treasury reg which he conveniently leaves off the end of the Treasury reg that the transfer to set aside claims of creditors from the transfer he says that it was that that excuse me the Treasury reg says the term of property also includes beneficial interest in assets including money which are transferred to set aside from claims of creditors of transfer he said this wasn't so except that he left off the words for example in a trust or escrow account and this was an escrow account that's correct in this case the non-vested shares were placed in an escrow account the taxpayer had voting rights with respect to the non-vested shares and dividends earned on the non-vested shares were paid directly to him and he had and he had unvested shares which he didn't have to make the election to the vested shares were covered anyway that's correct yeah basically section 83 B was meant precisely to cover a situation where a taxpayer receives non-vested stock and the idea is give the taxpayer the election to take it into income now when he thinks the value is lower the taxpayer here is essentially pointing to the fact that it's non-vested as a reason for invalidating his election in which case this section would never apply that's really all I have to say about the section 83 B election unless the court has further questions and then of course in Cadillac you there just to follow again like Norman and and like the Fifth Circuit in Merlot anything different Cadillac that would make it as far as his options that would make any difference in the analysis not not in the government's view one thing actually I wanted to point out back to Norman is just the one difference I guess between Cadillac and Norman is that in the Norman case the taxpayer is actually not trying to carry back the net operating loss he's arguing that he has a net operating loss that actually offsets his regular income in the same tax here there's absolutely no basis in the code or Treasury regulations for using an AMT NOL even if it existed to offset regular income in the Cadillac case he actually is trying to carry it back there's no basis for doing that either but that that's really the only sort of difference on the facts between these two cases as far as the AMT NOL argument would you repeat that first part because I think it's important there's no provision in the code to take an AMT NOL and offset it against regular income correct yeah in this case that would be Norman because that would be the Norman case because his he did not try to offset it against his capital gain right he was he used he attempted to use this AMT capital loss to offset the ordinary regular taxable income that he reported in the same tax year he ended up owing I think $11,000 in tax and is unless the court has further questions the government would just ask that both decisions be affirmed well in terms of just if you know not not speaking for the court or whatever but speaking on the issue of publication obviously this circuit you know Merlot does not control this circuit so but you're saying that you agree with that reasoning and generally speaking the court if the would not publish both cases would publish on one and then be the other case would be disposed of do you in terms of legal issues do you see either from the government's perspective I think from the government's perspective it would be important to have a published opinion from this court on the AMT NOL issue particularly because there are actually three other cases pending that are stayed pending the decision in Norman there's the Hernandez the Spitz case that were cited in our brief stayed pending the decision in Norman now Norman just focuses on AMT NOL at the same time we believe that it would be important to have a published decision on the section 83 B issue that's presented just in the Cadillac case and not in the Norman case but as far as the AMT NOL issue goes it's really identical in the two cases so I mean from your perspective then it would make sense to publish in Cadillac and on more issues I guess so I hope my supervisors would not disagree with me I think so we're not asking your supervisors anyway and we'll make that decision ourselves anyway I'm not I'm just I'm thinking through right all of these issues all right thank you okay thanks a lot he actually has three minutes of rebuttal okay thank you but we are asking the court to publish a decision and we're also asking the court to rule on what is the correct number in terms of the AMT amount and you have to go to the instructions and this is what the whole problem is is the IRS has that argued below at any point the instruction issue according to counsel the instruction issue never came up below well it was in the lower court in Norman in fact it was in the published decision and the problem is is that the Treasury has not issued any guidance and there's no place else to go in terms of determining what that number is so you're saying that the instructions trumped the statute we're saying that you have to look at both simultaneous instructions have words of art in it like alternative minimum tax NOL and whether you are whether you have one or you don't is a decision before you go to the instructions so I understand what you're saying about the instructions but you still got to qualify and the instructions to be one of those classifications you're just saying that you do that's all right right right we're saying that the statute precedes the instructions but you have to look at both that the other part is on it yeah if you don't fit the statute you're never going to get in the instruction let's put it that way if you don't get the statutes definition you're never going to put your yourself into an instruction on that definition but but we do fit it because there are no 172 C limitations and I got you I got you um no let's let's go on to the 83 B argument say I've got two minutes the statute uses the language which are set aside from the claims of creditors and then they use forgot to put the address of that that regulation in your brief and then they say for example a trust or an escrow account and this was an escrow account this was an escrow account but in our briefing they were still subject to the claims of creditors and just let me is we brief on our opening brief on page 27 we have several decisions by the bankruptcy court holding that those shares under these provisions are still subject to claims of creditors sorry about the rabbi trust yes yes so you so you've got to do both you can put them into an escrow but the language in that agreement has to say that they're not subject to the claims of creditors is there any evidence in this case that in particular this particular trust was subjected to the claims of creditors yes there is first of all is corporation unilaterally had the right to fire repurchase the shares that cost we have no transfer to the individual the beneficial ownership rules were intend to apply where there is a transfer or where there is a transfer set aside from the claims of creditors on page 27 of our brief we cite several cases holding that this type of a transfer is is not sufficient to protect the asset against the claims of creditors of the corporation and I think I'm down to 22 seconds the other thing I'd like to say is on the AMT case we're not claiming a capital loss we're claiming an AMT loss under section 172 we're not claiming to offset that loss against regular income we're claiming to offset that only against the alternative minimum taxable income all right and do you have any America and Cadillac versus the Commissioner of the IRS are now submitted as of this date thank you both for your argument the last matter on the calendar for argument today is truck stop versus
judges: Brunetti, Gould, Callahan